POTTS *v.* POTTS.

1. HUSBAND AND WIFE — SEPARATE MAINTENANCE — WHEN WIFE ENTITLED TO DECREE.
    To entitle a wife to a decree of separate maintenance under 3 Comp. Laws 1915, § 11479, such a state of facts must be shown as would entitle her, as far as the husband's wrongful acts are shown, to a decree of divorce upon the grounds specified in the petition, or it must be alleged and proved that the husband has deserted her with intent to leave her without sufficient means of support without good and sufficient cause.

2. SAME—EVIDENCE INSUFFICIENT TO ENTITLE WIFE TO DECREE.
    In a wife's suit for separate maintenance under 3 Comp. Laws 1915, § 11479, evidence *held*, insufficient to establish charge of extreme cruelty as would entitle her to a decree of divorce or to establish desertion with intent to leave

[1]Husband and Wife, 30 C. J. §§ 362, 863; [2]Id., 30 C. J. § 863.

her without sufficient means of support without good and sufficient cause.

3. SAME—WIFE NOT EQUITABLY ENTITLED TO SEPARATE SUPPORT.
   A wife who lived only a few weeks with her husband, a man of limited earning capacity and no property but his home which is less valuable than hers, who during the time they lived together received most of his wages and considerable other money, and who was willing to have him leave her and attempted to divorce him although he had been guilty of no act entitling her to a divorce, is not equitably entitled to her support from him while they are living apart.

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 19, 1926. (Docket No. 130.) Decided December 8, 1926.

Bill by Lena Potts against John Potts for a divorce. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

*Willard J. Turner* and *John G. Turner,* for defendant.

SNOW, J. The parties were married October 28, 1922, and separated December 12th following. They were around 65 years of age, both had been married before, and each owned a home. After the marriage they lived in plaintiff's home for about six weeks, during which time defendant supported her and gave her something more than $250 in cash. Immediately following the separation, plaintiff filed a bill for divorce. A cross-bill was filed, issues framed, trial had, and an opinion rendered by the trial court dismissing the bill of complaint and cross-bill and advising the parties to live together, but no decree was ever entered. They did not follow the court's suggestion however, and in September, 1923, the bill in

³Husband and Wife, 30 C. J. § 897.

the instant case was filed.    No question was raised of former suit pending.    It was accepted upon the hearing as a bill filed under and by virtue of section 11479, 3 Comp. Laws 1915, although no reference is made to this statute in the bill, and it is doubtful if it should have been so, treated.    However, we shall dispose of the case as one coming within the provisions of this statute.    The court granted plaintiff a decree of separate maintenance, and ordered defendant to pay her $2 per week, creating a lien upon his property to secure the payments.    From this decree defendant appeals.

The statute above referred to, among other things, provides:

"No decree shall be made in favor of the petitioner unless on the hearing either such a state of facts shall appear as would entitle her, as far as the husband's wrongful acts are shown, to a decree of divorce upon the grounds specified in the petition, or unless such a state of facts set out in the petition shall be proven as shall make it appear that the respondent has deserted the petitioner with intent to leave her without adequate means of support without good and sufficient cause."

The bill in the instant case charges extreme and repeated cruelty.    To entitle her to relief under the statute, she must sustain this charge to such an extent as would entitle her to a decree of divorce, or she must establish the alternative; viz., that her spouse deserted her with intent to leave her without adequate support.

The record discloses sufficient proof of neither of these things.    She produced no witness but herself, and she testified:

"*Q.* How did he treat you while he lived with you? "*A.* Treated me pretty fair; I wouldn't say anything about it."

Also:

"*Q.* After six weeks, then, did you have any trouble?
"*A.* No, never had any trouble.
"*Q.* No quarrel or anything?
"*A.* No never, and he said I was real good to him."

As to how the separation came about, the following constitutes the respective versions of the parties.

She testified:

"*Q.* Then what was said?
"*A.* This morning I couldn't sleep well and he said 'what is the matter, you got up early,' and I said, 'I don't feel well,' and he said, 'you didn't live up to the agreement,' and I told him that if he liked his children so much better, he could go, if he wanted to, because I didn't care for him neither; if he should die before me, would have nothing left because he wanted to keep everything.
"*Q.* Did he go away immediately after that?
"*A.* Yes, the same day.   He said, 'I am going to work today,' so the same night he came home, he says, 'Do you feel like you did this morning?'  I says, 'yes, sir,' and he said 'then I go,' and I said 'I will go back to my children,' so next morning he went.   We didn't have no quarrel.   We lived together as man and wife until he went away.   He never suggested coming back.   I asked him last summer through Mrs. McVeigh if he would help me, and he said, no, he wouldn't give me a cent.   He never spoke to me since. He made his home with his two daughters."

He testified:

"*Q.* How did you come to go away from there?
"*A.* Well, she stood up on Monday morning early, and I asked her when I got up what was the matter, whether she felt very good.   And she said, 'No, I don't feel very good because you spoiled my happy home.'   And I said, 'What is there up now?'   And she says, 'Well you better get out of here.'   And I said, 'what?'   And I said, 'I go to work anyhow today.' And at night when I come home I says, 'Didn't you change your mind from this morning'—'Not by a damn sight,' she says, 'you get out of here.'   'Well,' I says,

'then it is up to me to get for a boarding house.' 'You better,' she says, 'and get out of here.' "

Neither requisite of the statute having been met by the proofs, we must hold plaintiff has failed to establish a case.

But aside from such failure, and considering only the equity of the situation, we do not feel that defendant should be burdened with plaintiff's support while they are living apart. His earning capacity is limited. He has no property but his home, which is less valuable than the home of the plaintiff. They lived together but a few weeks, and during that time she received most of his wages and considerable of his money beside. She was willing, if not anxious, to have him leave her home, and she attempted to divorce him. He has been guilty of no act which would entitle her either to a decree of divorce or to separate maintenance. They must be left in the position in which they have placed themselves.

The decree is reversed, and one may be entered dismissing plaintiff's bill of complaint. No costs to either party.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.